```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

```
MELANIE JEAN POCZCIWINSKI,

                       Plaintiff,
          -vs-                              No. 1:15-CV-00007 (MAT)
                                            DECISION AND ORDER
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                       Defendant.
```
_____

**I.  Introduction**

Represented by counsel, Melanie Jean Poczciwinski ("plaintiff") brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits ("DIB"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, plaintiff's motion is granted, and the matter is reversed and remanded solely for the calculation and payment of benefits.

**II.  Procedural History**

The record reveals that in August 2011, plaintiff (d/o/b November 20, 1970) applied for DIB, alleging disability as of April 17, 2010. After her application was denied, plaintiff requested a hearing, which was held before administrative law judge Stanley A. Moskal, Jr. ("the ALJ") on March 12, 2013. The ALJ

issued an unfavorable decision on July 25, 2013. The Appeals Council denied review of that decision and this timely action followed.

### III. Summary of Administrative Record

The record establishes that, at the time of her hearing and the ALJ's decision, plaintiff carried longstanding diagnoses of depressive disorder, anxiety disorder, bipolar disorder, agoraphobia, and panic attacks. Plaintiff testified that she last worked as a medical office scheduler, but was laid off due to the position being eliminated in October 2009. Prior to 2010, the record reflects that plaintiff treated intermittently at DENT Neurologic Institute with psychiatrist Dr. Horacio A. Capote.

In April 2010, plaintiff was hospitalized for three days for symptoms associated with anxiety. Plaintiff sought treatment, reporting that she "felt a lot of anxiety, numbness in her fingers, shaking to realization, chills and hot flashes, and felt she was going to lose control." T. 230. She reported that she locked herself in a room because she was afraid she would hurt herself or her cat. After calling her sister, who lived next door, she was afraid she would hurt her sister. She stated she had not left her home for three to four months, and reported symptoms of paranoia. According to plaintiff, she had not been in treatment since losing her job, and insurance, in October 2009. Plaintiff was eventually discharged with diagnoses of major depression and anxiety, not

otherwise specified ("NOS"). Plaintiff was prescribed medications for treatment of mental health symptoms, and she was referred to Spectrum Health Services ("Spectrum") for mental health treatment.

The record reflects that plaintiff treated with Spectrum from the time immediately following her hospitalization through the time of the ALJ's decision. T. 243-90, 297-369, 396-425, 431-41, 443-47. During that time period,[1] plaintiff treated on an approximately biweekly basis with counselor Marcia Langa, nurse practitioner ("NP") Ann Marie Pasek, and psychiatrist Dr. Jeffrey Kashin. Plaintiff's treatment notes reflect, as the ALJ noted, that plaintiff's symptoms "waxed and waned" during this time period. T. 24. She was consistently diagnosed with major depressive disorder, sometimes with psychotic features, and anxiety disorder, NOS. Although at times she reported significant improvement with medication, at other times she reported symptoms of depression and anxiety to the extent that she was unable to even leave her house. Plaintiff's medications were adjusted often during her treatment in accordance with her varying condition. On mental status examinations ("MSE"), her affect was often noted to be depressed and anxious. Her progress toward goals in therapy fluctuated throughout her treatment, with her mental status noted as

---

[1] Although the ALJ noted that the record reflected a "gap" in treatment from May 2012 through May 2013, it is unclear from the record whether plaintiff ceased treatment at Spectrum during this time, or whether records of treatment during that time are simply absent from the record.

3

alternating between an improving state to a deteriorating or unstable state.

Plaintiff reported that she wished to return to work, but was "petrified" of interviews (T. 254) and the social stressors associated with work and job selection. In September 2010, plaintiff reported that she had begun working, on an unpaid part-time basis, at her father's restaurant. At times during her treatment, she reported improvement with working at the restaurant, stating that it was helping her to structure her days. T. 258-59, 261. However, plaintiff also reported anxiety associated with this work, especially when it involved having to increase her hours or take on more responsibility. T. 47, 261, 276, 277.

Dr. Sandra Jensen completed a consulting psychiatric examination, at the request of the state agency, in October 2011. Dr. Jensen diagnosed depressive disorder, NOS, generalized anxiety disorder, and panic disorder with agoraphobia. Dr. Jensen noted abnormalities on MSE, including pressured and shaky speech, anxious affect and mood, and mildly impaired attention and concentration secondary to anxiety. Otherwise, MSE was unremarkable. Dr. Jensen opined:

> With regards to [plaintiff's] vocational functional capacities; she can follow and understand simple directions and instructions, and perform simple tasks independently within normal limits. Her ability to maintain attention and concentration, maintain a regular schedule, and learn new simple tasks will be mildly impaired because of her anxiety. Her ability to perform complex tasks with supervision, make appropriate

4

> decisions, relate adequately with others, and appropriately deal with stress at this point are mildly to moderately impaired because of her anxiety. It is likely that if she increases her medications and is able to stabilize on them, that she would have normal functioning in all of those areas.

T. 295. The ALJ gave Dr. Jensen's opinion "significant" weight, stating that it was consistent with his residual functional capacity ("RFC") determination. T. 26.

The ALJ also gave significant weight to the opinion of Dr. M. Totim, who reviewed plaintiff's file in December 2011 and completed a psychiatric review technique form and mental RFC. In Dr. Totim's opinion, plaintiff "retain[ed] the capacity for simple work in a low contact environment." T. 382. He found no marked limitations in her functioning, but assessed moderate limitations in understanding, remembering, and carrying out detailed instructions; maintaining attention or concentration for extended periods; performing activities within a regular schedule; completing a normal workday or workweek without interruptions from psychological symptoms; interacting appropriately with the general public; accepting instructions and receiving criticism from supervisors; and setting realistic goals or making plans independently of others. Dr. Totim also found several mild limitations in functioning.

On May 18, 2012, plaintiff's treating psychiatrist, Dr. Kashim, completed a detailed psychiatric evaluation indicating that she had treated with him from April 2010 through May 2012. He

5

reported diagnoses of bipolar disorder, NOS (noting, however, that plaintiff experienced only depressive, and not manic, episodes) and anxiety disorder, NOS. He indicated that plaintiff experienced continuous severe symptoms of anhedonia, decreased energy, feelings of guilt, feelings of worthlessness, generalized persistent anxiety, and fatigue. He opined that she experienced intermittent symptoms of appetite disturbance or change in weight, psychomotor agitation or psychomotor retardation, difficulty thinking, difficulty concentrating, motor tension, autonomic hyperactivity, vigilance and scanning, restlessness, feeling keyed up or on edge, "[m]ind going blank," "persistent irrational fear of object, activity, or situation that causes patient to avoid the object, activity, or situation," and persistent panic attacks. T. 433-34. Dr. Kashim indicated that plaintiff experienced every listed symptom of panic attacks, with the exception of chest pain.

Dr. Kashim also opined that plaintiff experienced recurrent obsessions and compulsions which were a source of marked distress. In terms of ADLs and social functioning, Dr. Kashim indicated various intermittent limitations, with continuous severe limitations in using public transportation, planning daily activities, initiating and participating in activities independent of supervision or direction, holding a job, establishing interpersonal relationships, interacting and participating in group activities, and initiating social contacts.

6

Dr. Kashim opined that plaintiff suffered from various functional limitations associated with her mental conditions, including continuous moderate limitations in independent functioning, persistence in tasks, completing tasks in a timely manner, and repeating sequences of actions to complete a goal; and continuous severe limitations in assuming increased mental demands associated with competitive work, sustaining tasks without an unreasonable number of breaks or rest periods, and sustaining tasks without undue interruptions or distractions.

Dr. Kashim reported that plaintiff had experienced repeated episodes of decompensation, commenting that plaintiff had "been unstable for [the] past few years with frequent episodes of depression and/or panic attacks." T. 437. He stated that she was able to live alone, but became "very withdrawn during episodes of depression." Id. Finally, he stated that her conditions could be expected to last for at least 12 months. The ALJ gave "very little weight" to this opinion from Dr. Kashim, finding that there were "very few notes from Dr. Kashim in the record," and the notes from Spectrum "do not support most of the findings/opinions in the evaluation." T. 25.

On May 31, 2012, Dr. Kashim completed a medical source statement of ability to do work-related activities (mental), in which he opined that she had moderate limitations understanding, remembering, and carrying out simple instructions and making

7

judgments on simple work-related decisions; moderate to marked limitations in interacting appropriately with the public, supervisors, and co-workers, and responding appropriately to work situations; and marked limitations understanding, remembering, and carrying out complex instructions, and making judgments on complex work-related instructions. Dr. Kashim commented that plaintiff's "depression interfere[d] with her ability to focus and think clearly." T. 439. He stated that when she was "feeling anxious [and] having panic attacks she [was] not able to think clearly or remember any instructions." Id. According to Dr. Kashim, "[t]here [were] times when she [was] unable to leave her [apartment], talk on the phone or interact with anyone," noting that she had "been in treatment at Spectrum for 2 years with little improvement in her mood instability." T. 440. The ALJ gave "little weight" to this opinion, finding that "[a]gain, the Sepctrum treatment notes do not support the level of restrictions described in this medical source statement," and "the assignment of marked limitations for interaction with co-workers and the general public [was] inconsistent with [plaintiff's] ability to help out at her father's restaurant several days a week." T. 25.

**IV. The ALJ's Decision**

The ALJ followed the well-established five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. § 404.1520. Initially, the ALJ

determined that plaintiff met the insured status requirements of the Social Security Act through June 30, 2014. At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since April 17, 2010, the alleged onset date. At step two, the ALJ found that plaintiff suffered from the following severe impairments: depression, anxiety disorder, and panic disorder with agoraphobia. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. In assessing the paragraph B criteria, the ALJ found that plaintiff had no restrictions in activities of daily living ("ADLs"); moderate difficulties in social functioning; mild difficulties in concentration, persistence, or pace; and no episodes of decompensation of extended duration.

Before proceeding to step four, the ALJ determined that plaintiff retained the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations: she was limited to simple, repetitive and routine tasks with no more than occasional contact with co-workers, supervisors, and the general public. At step four, the ALJ determined that plaintiff was not capable of performing past relevant work as a medical scheduler or office worker. At step five, the ALJ found that considering plaintiff's age, work experience, and RFC, jobs existed in significant numbers in the

9

national economy that plaintiff could perform. The ALJ thus found that plaintiff was not disabled.

**V.    Discussion**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhard, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

**A.   Weight Given to Medical Source Opinions**

Plaintiff argues that the ALJ's assignment of very little weight to Dr. Kashim's treating source opinions constituted a violation of the treating physician rule. Correspondingly, plaintiff argues that the ALJ's assignment of significant weight to the consulting agency opinions was inadequately explained and unsupported by substantial record evidence. The Court agrees with plaintiff that the ALJ failed to appropriately apply the treating physician rule. Because the Court finds this issue to be dispositive, it will not address plaintiff's remaining arguments.

The treating physician rule provides that an ALJ must give controlling weight to a treating physician's opinion if that opinion is well-supported by medically acceptable clinical and

diagnostic techniques and not inconsistent with other substantial evidence in the record. See Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. § 416.927(c)(2). When an ALJ declines to accord controlling weight to a treating physician's opinion, the ALJ "must consider various 'factors' to determine how much weight to give to the opinion[,]" id. (quoting 20 C.F.R. § 404.1527(d)(2)), such as "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.'" Id. (quoting 20 C.F.R. § 404.1527(d)(2)).

Although it is unclear from the record exactly how many documented treatment sessions at Spectrum were conducted by Dr. Kashim as opposed to plaintiff's counselor or nurse practitioner, it is apparent from the record that Dr. Kashim treated plaintiff over a significant period of time. Moreover, it is clear from his two detailed opinions that he was fully familiar with plaintiff's treatment, which he noted had continued for a period of two years prior to his May 2012 opinions. Notably, in addition to checking the applicable boxes on forms provided by the Administration, he also gave detailed handwritten commentary as to

11

plaintiff's mood instability and resulting functional limitations. On the basis of this record, it is clear that if Dr. Kashim's opinions received controlling weight, plaintiff would be adjudicated disabled under the Act.

The record reveals that the ALJ discounted Dr. Kashim's opinion that plaintiff had experienced repeated episodes of decompensation. In making that finding, Dr. Kashim specifically commented that plaintiff had "been unstable for [the] past few years with frequent episodes of depression and/or panic attacks." T. 437. The Court finds that this opinion was not inconsistent with the record, as the ALJ found. As described in the Commissioner's regulations, episodes of decompensation are demonstrated by evidence of exacerbation of symptoms or signs that would necessitate increased treatment such as significant alterations in medication or a structured psychological support system, e.g., hospitalization. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(C)(4). Although, as the ALJ noted, plaintiff only had one instance of hospitalization, her treatment notes at Spectrum indicate fluctuating mental episodes which required alteration of her medications. Plaintiff's repeated episodes of decompensation conformed with the definition set forth in the regulations. Id. (defining episodes of decompensation as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities

12

of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace," which episodes "may be inferred from medical records showing significant alteration in medication . . .").

Plaintiff also takes issue with the ALJ's finding that, contrary to Dr. Kashim's opinion, there was "no evidence to support a fear of dying, a feeling of unreality, or a feeling of being detached from oneself." T. 25. As plaintiff notes, however, the record is replete with evidence that plaintiff suffered from repeated episodes of panic attacks. Upon her hospitalization in 2010, plaintiff reported feeling "a lot of anxiety, numbness in her fingers, shaking to realization, chills and hot flashes, and felt she was going to lose control." T. 230. She also reported fear of hurting herself, her sister, or her pet. In October 2011, when plaintiff reported an increase in panic attacks, she stated that she "felt out of control" while driving her brother and now refused to drive her car with an occupant other than herself. T. 269. Substantial evidence in the record supports Dr. Kashim's opinion that plaintiff's panic attacks resulted in the symptoms he described, and the ALJ therefore improperly discredited Dr. Kashim's opinion. See Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) ("When other substantial evidence in the record *conflicts with* the treating physician's opinion . . . that opinion will not be deemed controlling.") (emphasis added).

The ALJ erred in construing the record against plaintiff when deciding to give little weight to Dr. Kashim's opinion. For example, the ALJ stated that "the assignment of marked limitations for interaction with co-workers and the general public [was] inconsistent with [plaintiff's] ability to help out at her father's restaurant several days a week." T. 25. Upon review of the medical record, however, the Court concludes that this statement mischaracterized the evidence. Treatment notes indicated that while plaintiff sometimes reported improvement in symptoms while helping out on a volunteer part-time basis at her father's restaurant, this activity was also a consistent contributing source of stress and anxiety to plaintiff. Rather than suggesting an ability to perform full-time substantial gainful activity, plaintiff's unpaid work at her father's restaurant indicates that she did not have the capacity to successfully perform paid part-time work.

Additionally, the ALJ's discussion of the Spectrum treatment notes reflects a troublesome tendency to highlight only evidence of plaintiff's improvement in therapy, while neglecting the overall impact of the medical record, which supports Dr. Kashim's assessment of ongoing and serious mood instability. Although the ALJ noted that plaintiff's "symptoms waxed and waned" during her more than two-year treatment at Spectrum, he went on to describe only instances of positive improvement in her therapy. A review of this medical record supports the conclusion that the ALJ's

14

discussion of plaintiff's mental health treatment reflected a picking and choosing of treatment notes supportive of his ultimate finding of non-disability. See Nix v. Astrue, 2009 WL 3429616, *6 (W.D.N.Y. Oct. 22, 2009) (noting that "an ALJ cannot pick and choose only parts of a medical opinion that support his determination," and "may not ignore an entire line of evidence that is contrary to [his] findings") (internal quotation marks omitted); Sutherland v. Barnhart, 322 F. Supp. 2d 282, 289 (E.D.N.Y. 2004) ("It is not proper for the ALJ to simply pick and choose from the transcript only such evidence that supports his determination, without affording consideration to evidence supporting the plaintiff's claims.") (citing Lopez v. Sec'y of Dept. of Health and Human Services, 728 F.2d 148, 150-51 (2d Cir. 1984)).

The Court thus concludes that the ALJ did not provide the "good reasons" required to accord less than controlling weight to the treating physician's opinion. See Silva v. Colvin, 2015 WL 5306005, *5 (W.D.N.Y. Sept. 10, 2015) (citing Blakely v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009) (noting that the "good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific'"); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 243 (6th Cir. 2007) (noting that "good reasons" rule exists to "ensur[e] that each denied claimant receives fair process")). The Court further determines that, considering the administrative record, the ALJ's decision to discard Dr. Kashim's

15

opinion and instead accord significant weight to the consulting opinions – without any explanation except that the opinions were "consistent with" the ALJ's RFC assessment – was unsupported by substantial evidence in the record. Dr. Jensen was the only consulting source to examine plaintiff, and her consulting examination represented a mere snapshot of plaintiff's functioning. However, Dr. Kashim's opinions were based on years of treatment and were quite detailed and well-supported by plaintiff's fluctuating mental status as reflected by the medical record.

For all of the above reasons, the Commissioner has failed to meet her burden, at the fifth step of the analysis, to prove that plaintiff was not disabled. See, e.g., Huhta v. Barnhart, 328 F. Supp. 2d 377 (W.D.N.Y. 2004) (where Commissioner fails to meet burden despite ample opportunity to do so, a finding of disabled is warranted). Moreover, the opinions of plaintiff's treating physician were entitled to controlling weight. The record is clear that if the opinion of plaintiff's treating psychiatrist controls, there are no jobs in the national economy that plaintiff can perform, thus justifying a finding of disability. See generally Social Security Ruling 96-9p, 1996 WL 374185 (1996) ("A substantial loss of ability to meet any one of several basic work activities on a sustained basis . . . will substantially erode the unskilled sedentary occupational base and would justify a finding of disability."). Because additional proceedings would serve no

purpose and would lead to further delay in this case which has been pending for over four years, remand solely for the calculation and payment of benefits is warranted. See Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980); Sublette v. Astrue, 856 F. Supp. 2d 614, 619 (W.D.N.Y. 2012).

**VI. Conclusion**

For the foregoing reasons, the Commissioner's cross-motion for judgment on the pleadings (Doc. 16) is denied and plaintiff's motion (Doc. 7) is granted. This matter is reversed and remanded solely for the calculation and payment of benefits. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                       **S/Michael A. Telesca**
                                     HON. MICHAEL A. TELESCA
                                     United States District Judge

Dated:    January 22, 2016
             Rochester, New York.